429 P.2d 379

**Lemuel Joe HALES, Plaintiff-Appellant,**

**v.**

**Frank VAN CLEAVE, Employer, and Mountain States Mutual Casualty Company, Defendants-Appellees.**

**No. 34.**

Court of Appeals of New Mexico.

June 9, 1967.

182

E. Forrest Sanders, Las Cruces, for appellant.

Ray Hughes, Deming, for appellees.

OPINION

OMAN, Judge.

This is a suit under the Workmen's Compensation Act of New Mexico. It is unquestioned that plaintiff sustained compensable injuries on December 22, 1964, while employed by defendant, Van Cleave; that he was entitled to the maximum compensation benefits of $38.00 per week during the period of his total disability; that he received weekly benefits at this rate from defendant, Mountain States Mutual Casualty Company, from the date of his injury to February 28, 1966, for a total period of sixty-two weeks and total compensation of $2,356.00; and that he was furnished medical and hospital attention by the said compensation insurer between the date of his accident and the date of trial of this cause on November 3, 1966.

The principal dispute in this case arose over the percentage of permanent disability which plaintiff sustained as a result of his injuries. His position was, and still is, that he is permanently and totally disabled. The trial court found he was partially disabled to the extent of 25%. He has taken this appeal from a judgment awarding him compensation benefits at the rate of $9.50 per week for 438 weeks, based upon a 25% partial permanent disability, in addition to the compensation benefits previously paid to him.

His first asserted error is that the trial court's finding as to the nature of the injuries he sustained, although supported by the evidence, is not a full, true and correct resume of the injuries, and that the trial court should have adopted his requested finding which details his injuries, the complications arising therefrom, the recovery made from each such injury and complication, and the probability that he will require further medical attention at some time in the future. This requested finding covers almost two pages of the transcript. The court's finding correctly describes the nature of the injuries sustained, but does so in general terms and does not go into the mi-

nute details requested by plaintiff. The Rules of Civil Procedure for the District Courts are here applicable. Section 59–10–13.9, N.M.S.A.1953. Rule 52(B) (a) (2) of the Rules of Civil Procedure expressly provides that:

"The findings of fact shall consist only of such ultimate facts as are necessary to determine the issues in the case, as distinguished from evidentiary facts supporting them. * * *"

■ The court's finding was sufficient, and he was not required to detail the evidence. State ex rel. State Highway Comm'n. v. Pelletier, 76 N.M. 555, 417 P.2d 46 (1966); Brundage v. K. L. House Construction Co., 74 N.M. 613, 396 P.2d 731 (1964); Hoskins v. Albuquerque Bus Co., 72 N.M. 217, 382 P.2d 700 (1963); Griego v. Hogan, 71 N.M. 280, 377 P.2d 953 (1963); Goodwin v. Travis, 58 N.M. 465, 272 P.2d 672 (1954); Campbell v. Doherty, 53 N.M. 280, 206 P.2d 1145, 9 A.L.R.2d 699 (1949).

Plaintiff next contends the trial court erred because in one finding he refers to "the time of his [plaintiff's] recovery," and in another he refers to "plaintiff's recovery from the injuries received in the accident." Plaintiff argues that the evidence is all to the effect that he has not recovered. It is apparent that the court was referring to the healing period, or the period of plaintiff's total disability. See Rhodes v. Cottle Const. Co., 68 N.M. 18, 357 P.2d 672 (1960). In the one finding to which objection is made, the court, after referring to the plaintiff's recovery, continues to recite the nature of plaintiff's disability following his recovery. And, as above stated, the court found plaintiff has a 25% permanent disability to his body as a whole as a result of the injuries he sustained.

■ The word "recovery" does not necessarily imply a complete return to the normal or usual state. It is correctly used in referring to a return toward a normal or usual state. Webster's Third New International Dictionary Unabridged (1966). We are of the opinion that there is no doubt as

to the trial court's meaning of the use of the word "recover," but, if there be any doubt, such doubt must be resolved in favor of the judgment. Massey v. Beacon Supply Co., 70 N.M. 149, 371 P.2d 798 (1962); Hinkle v. Schmider, 70 N.M. 349, 373 P.2d 918 (1962).

The plaintiff's next three points are all directed at his claims that there is no evidence to support the trial court's finding and conclusion that plaintiff has sustained only a 25% permanent disability, and that the evidence shows conclusively that he is permanently and totally disabled.

Total and partial disability were defined in N.M.Laws 1963 ch. 269, § 1, which was in effect at the time of the accident out of which this cause arises, in the following language:

"A. 'total disability' means a condition whereby a workman, by reason of an injury arising out of, and in the course of, his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience; and

"B. 'partial disability' means a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience."

Plaintiff was born on September 25, 1944, was twenty years of age at the time of the accident, and was twenty-two years of age at the time of the trial. He completed the second year of high school, and attended about twelve weeks of his junior year before quitting. Thereafter, he completed a correspondence course in mechanics and received a certificate from the school offer-

ing the course. He is of average mental capacity for a person his age.

Insofar as his work experience is concerned, he worked for about six months in a service station, worked for almost a year in different capacities in connection with mining, and worked at some odd jobs of short duration.

The evidence adduced at the trial came from three witnesses: the plaintiff, Dr. Walsh of Silver City, New Mexico, who was his treating physician, and who was called as a witness by plaintiff, and Dr. Hastings, an orthopedic surgeon of Tucson, Arizona, who was selected by plaintiff, but to whom plaintiff was referred by Dr. Walsh. Dr. Hastings' testimony was offered by defendants, and consisted of a letter of December 22, 1965, and an attached report of consultation and examination. The letter and the report were received into evidence by stipulation of the parties.

The plaintiff testified on direct examination that mining is the only type of work he had ever done, that he was raised around miners, and that he had been unable to·do any work since the injury. On cross-examination he testified to his work experience in a filling station and in performing odd jobs of short duration. On redirect examination, he again testified he had been unable to engage in any employment since his injury, and that he would go back to work if he felt he were able to engage in mining. On further redirect examination he testified that by training and experience he figured he was qualified only to do mining.

Dr. Walsh testified that in his opinion the plaintiff was not able and will not be able to perform the work of a miner, and is unable to perform work which requires him to lift heavy objects, or which will require extensive bending, stooping, or squatting. He testified that in his opinion the plaintiff's disability arises primarily from the injury to his left hip; that there are many things which he can do; that he is able to perform the normal duties of a filling station attendant; that he can perform the duties of any type of work which requires only arm strength; that he can perform the duties of any type of work which permits him to sit a large portion of the time; and that he has sustained a 25% permanent disability on a functional basis as a result of the injuries he sustained in the accident.

Dr. Hastings gave it as his opinion that plaintiff had sustained about a 25% general disability as a result of his injuries.

Findings of the trial court supported by substantial evidence will not be disturbed on appeal. Varney v. Taylor, 77 N. M. 28, 419 P.2d 234 (1966); Berryhill v. United States Cas. Co., 76 N.M. 726, 418 P.2d 185 (1966).

Relevant evidence which is acceptable to a reasonable mind as adequate support for a conclusion is substantial. Wilson v. Employment Security Comm'n., 74 N.M. 3, 389 P.2d 855 (1963); Tapia v. Panhandle Steel Erectors Co., 428 P.2d 625, 78 N.M. 86, issued May 8, 1967. The credibility of the witnesses and the weight to be given to their testimony are to be determined by the trial court, as the trier of the facts, and are not matters to be determined by an appellate court. Dotson v. Farmer's, Inc., 74 N.M. 725, 398 P.2d 54 (1965); Sanchez v. Garcia, 72 N.M. 406, 384 P.2d 681 (1963); Varney v. Taylor, supra.

We are of the opinion that the trial court's findings are supported by substantial evidence. We would reach the same result, even if we were to disregard that portion of Dr. Walsh's testimony whereby he gave it as his opinion that plaintiff has suffered a 25% permanent disability on a functional basis. We agree with plaintiff that a certain percentage of functional disability is not necessarily the same percentage of disability attributable to an injury under the Workmen's Compensation Act. However, a medical expert may properly express his opinion in percentages as to the impairment of the physical functions of a claimant. Seal v. Blackburn Tank Truck Serv., 64 N.M. 282, 327 P.2d 797 (1958).

█ The plaintiff's next contention is that the trial court erred in finding that defendants, more than thirty days prior to the trial, offered to settle plaintiff's claim for more than plaintiff is entitled to receive. Plaintiff admits that defendants offered to pay him $8,322.00, plus a reasonable attorney's fee, in addition to compensation and medical expenses previously paid, that this offer was in writing and was made more than thirty days prior to the trial, and that it was refused. His position is, however, that he is permanently and totally disabled, and thus the offer was for less than he is entitled to receive. Our foregoing holding, that the court's finding, that plaintiff has sustained a 25% permanent disability, is supported by the evidence, disposes of his contention that he is entitled to more than the amount offered. Since the plaintiff recovered less than the amount offered, the trial court properly held that he is not entitled to an attorney's fee. Section 59–10–23, subd. D, N.M.S.A.1953; Rhodes v. Cottle Const. Co., supra; Rayburn v. Boys Super Market, Inc., 74 N.M. 712, 397 P.2d 953 (1964); Boggs v. D & L Const. Co., 71 N.M. 502, 379 P.2d 788 (1963).

Plaintiff's next contention is that the trial court erred in failing to require payment by defendants of $52.00, the amount plaintiff was charged by Dr. Walsh for appearing and testifying at the trial on behalf of the plaintiff. The trial court expressly ruled that plaintiff is not entitled to costs. The only provision of our Workmen's Compensation Act relating to the assessment of medical witness fees appears in § 59–10–13.10, subd. B, N.M.S.A.1953. If it can be said that Dr. Walsh was a medical witness within the contemplation of this provision, still, the language thereof provides: "* * * the court may assess against the defendants the fees allowed any medical witness * * *." The court is not required to assess such fees against defendants. As stated in 2 Larson, Workmen's Compensation Law, § 83.20 at 352:

"Like attorneys' fees, other fees and expenses must be borne by the parties themselves, in the absence of a statute shifting the incidence of such expenses."

* * * * * *

█ Section 20–1–4, subd. B, N.M.S.A. 1953, as amended in 1959, provides the district court "* * * may order the payment of a reasonable fee, to be taxed as costs * * *, for any witness who qualifies as an expert and who testifies in the cause in person or by deposition." Again, this statute only authorizes the trial court to tax an expert fee as costs. It does not require the trial court to do so.

Section 21–1–1(54) (d), N.M.S.A.1953, provides in part:

"COSTS. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * *."

In view of the amount of the offer made and rejected, and the subsequent recovery by plaintiff on the trial, there is certainly a question as to whether or not plaintiff was the prevailing party. However, we dispose of plaintiff's contention on another basis.

As noted above, the trial court expressly directed that plaintiff is not entitled to costs.

█ As held in Mills v. Southwest Builders, Inc., 70 N.M. 407, 374 P.2d 289 (1962), the matter of assessing costs under this last cited statute lies within the discretion of the trial court, and an appellate court will not interfere with the trial court's exercise of this discretion in this regard, except in the case of abuse. See also Loucks v. Albuquerque Nat'l Bank, 76 N.M. 735, 418 P.2d 191 (1966). Nothing has been urged upon us, and we find nothing, which causes us to conclude that the trial court abused its discretion.

█ Plaintiff next contends that he should have judgment for $1,500.00, because the medical witnesses both indicated, and the court so found, that he will probably, at some future time, need to have a fusion

or arthoplastic type operation on his left hip, and Dr. Walsh testified the medical and hospital expenses incident to such an operative procedure would probably run about $1,500.00. Plaintiff cites no authority for his position that he is entitled to judgment in a workmen's compensation case for anticipated medical expenses. The provision of our Workmen's Compensation Act relative to the responsibility of the employer to furnish medical and related benefits appears in § 59–10–19.1, N.M.S.A. 1953. Nothing in this section, or in any other section of the Workmen's Compensation Act, suggests that the injured employee may presently recover judgment against the employer, or the insurer, for medical expenses which may at some time in the future prove necessary as a result of the injury.

Plaintiff's next contention is that he was entitled to an award for his travel expenses in making trips from Duncan, Arizona, where he moved with his parents after his injury and his release from the hospital, to Silver City, New Mexico and return, and from Duncan to Tucson and return. The trips to Silver City were made to see Dr. Walsh, in connection with his treatment, and the trips to Tucson were made to see Dr. Hastings in connection with his examination.

The plaintiff testified that he had made two trips to Tucson, and "more than 15 trips" to Silver City; that it is about 85 miles from Duncan to Silver City, and about 165 miles from Duncan to Tucson; that 10 cents per mile is the amount allowed, or the going rate, for mileage; and that he had to have some meals and lodging on these trips. However, no effort was made to establish even the proximate number of these meals, or on how many of these trips he required lodging, how much these meals and lodging cost, or even the approximate cost thereof. We observe that during at least a considerable portion of the time he claims he was making these trips from Duncan to Silver City, his mother was living in Duncan, but his father was operating a mine and living in Grant County, New Mexico, in the vicinity of Silver City.

In his requested findings he asked the court to find that he had been required to make "22 trips" from Duncan to Silver City and return, for "an approximate expense of $20.00 per trip," and two trips from Duncan to Tucson and return "at an aggregate expense of $80.00." He cites absolutely no authority for his contention that he was entitled to be reimbursed for these claimed expenses.

The trial court refused the requested finding tendered by plaintiff, and concluded that plaintiff is not entitled to reimbursement for travel expenses. Since the trial court refused the requested finding by plaintiff, upon whom rested the burden of establishing the amount of these expenses and his right to recover the same, if they were in fact properly recoverable, this amounted to a finding against plaintiff on this issue. Hoskins v. Albuquerque Bus Co., supra; Hopkins v. Martinez, 73 N.M. 275, 387 P.2d 852 (1964); Tsosie v. Foundation Reserve Ins Co., 77 N.M. 671, 427 P.2d 29 issued May 1, 1967.

Even though the testimony of the plaintiff as above outlined was not contradicted, the trial court could still determine his credibility from all the facts and circumstances, as well as his demeanor on the stand, his interest or bias shown by his testimony, his conduct, the inherent probability or improbability of his statements, and from all these matters determine the truthfulness of his testimony. Bell v. Kenneth P. Thompson Co., 76 N.M. 420, 415 P.2d 546 (1966); Beacon Supply Co. v. American Fiber Corp., 75 N.M. 29, 399 P.2d 927 (1965); Allsup v. Space, 69 N.M. 353, 367 P.2d 531 (1961); Luna v. Flores, 64 N.M. 312, 328 P.2d 82 (1958); Zengerle v. Commonwealth Ins. Co., 63 N.M. 454, 321 P.2d 636 (1958); Waters v. Blocksom, 57 N.M. 368, 258 P.2d 1135 (1953); Pentecost v. Hudson, 57 N.M. 7, 252 P.2d 511 (1953). Even though we may have made a finding contrary to

that of the trial court, an appellate court will not substitute its judgment for that of the trial court who heard all the evidence and observed the demeanor of the witness. Bell v. Kenneth P. Thompson Co., supra; Beacon Supply Co. v. American Fiber Corp., supra; Gish v. Hart, 75 N.M. 765, 411 P.2d 349 (1966); Hinkle v. Schmider, supra.

The plaintiff's final contention is that the trial court erred in making certain conclusions of law, because they were either not supported by findings or the findings were in error. The questions pertaining to the adequacy and correctness of the trial court's findings were raised in his prior points and they have been discussed above.

Finding no error on the part of the trial court, it follows that the judgment must be affirmed.

It is so ordered.

SPIESS and WOOD, JJ., concur.